NVB 4001 (Rev. 09/20)

## * * § 362 INFORMATION SHEET * *

| CYNTHIA L. GARCIA | 21-13343-nmc | GB-1 |
|---|---|---|
| DEBTOR | BK- | MOTION #: |
| Carvana, LLC | CHAPTER: 13 | |
| MOVANT | | |

### *Certification of Attempt to Resolve the Matter Without Court Action:*

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* November 23, 2021        *Signature:* /s/ Regina A. Habermas

*Attorney for Movant*

**Note for parties not represented by an attorney:** Information about motions for relief from the automatic stay is available at the U.S. Bankruptcy Court's website:
https://www.nvb.uscourts.gov/filing/filing-pro-se/legal-services/.

PROPERTY INVOLVED IN THIS MOTION: 2017 Ford Focus

NOTICE SERVED ON:  Debtor(s) ✔ ; Debtor's counsel ✔ ; Trustee ✔ ;

DATE OF SERVICE: November 23, 2021

### MOVING PARTY'S CONTENTIONS:

The EXTENT and PRIORITY of LIENS:

1st $10,253.17
2nd
3rd
4th
Other:
Total Encumbrances: $10,253.17

APPRAISAL of OPINION as to VALUE:

$9,784.00 per debtor's schedules A/B.

### DEBTOR'S CONTENTIONS:

The EXTENT and PRIORITY of LIENS:

1st
2nd
3rd
4th
Other:
Total Encumbrances:

APPRAISAL of OPINION as to VALUE:

### TERMS of MOVANT'S CONTRACT with the DEBTOR(S)::

Amount of Note: $10,284.16
Interest Rate: 25.974%
Duration: 72 months
Payment per Month: $284.00
Date of Default: 09/14/2021
Amount in Arrears: $862.00
Date of Notice of Default:
SPECIAL CIRCUMSTANCES:

SUBMITTED BY: Regina A. Habermas
Regina A. Habermas

### DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT :

.
.
.
.
.
.
.

SPECIAL CIRCUMSTANCES:

SUBMITTED BY:
SIGNATURE:

Regina A. Habermas, Esq.
Nevada Bar No. 8481
GHIDOTTI BERGER, LLP
7251 West Lake Mead Blvd. Suite 470
Las Vegas, NV 89128
Tel: (949) 427-2010
Fax: (949) 427-2732
Email: ghabermas@ghidottiberger.com

Attorney for Secured Creditor
Carvana, LLC, its successors and assigns

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA, LAS VEGAS

| | |
|---|---|
| In re: | **CASE NO.: 21-13343-nmc**<br>**Chapter 13** |
| **CYNTHIA L. GARCIA**, | |
| | **MOTION FOR RELIEF FROM STAY**<br>**(11 U.S.C. § 362, Bankruptcy Rule 4001)** |
| Debtor. | |

### I.    INTRODUCTION

**COMES NOW**, Carvana, LLC, its successors and assigns ("Movant") and moves this Court for an order terminating the automatic stay, allowing Movant to proceed with and complete any and all contractual and statutory remedies incident to its interest held in the 2017 Ford Focus, VIN#1FADP3F24HL285597 ("Vehicle") by virtue of the Contract and Title described below and attached as exhibits to this motion and memorandum. Movant further moves that, absent objection, the provisions of F.R.B.P. 4001(a)(3) be waived to avoid further deterioration of Movant's secured position.

Prior to the filing of the Motion for Relief from the Automatic Stay, counsel attempted to resolve the matter outside of court. However, those attempts were not successful.

/ / /

## II.    JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C § 1334 and 28 U.S.C. § 157(b)(2)(G).  This case relates to a case under Title 11 of the United States Code ("**Code**").  This proceeding is defined as a "core proceeding" as that is defined in the Code.

## III.    STANDING

Under 11 U.S.C. § 362, a party seeking relief from stay must be a "party in interest."  To establish that Movant is a "party in interest," it must establish that it has at least a colorable claim to the Vehicle that is the subject of the motion.  In the case at bar, Movant's claim is based on the Contract and Title attached to the declaration in support of Movant's Motion for Relief from Stay, on file with the Court.  Movant's interest in the Contract and Title is described below.

## IV.    THE CONTRACT AND TITLE

On or about September 13, 2020, Debtor, CYNTHIA L. GARCIA ("Debtor") executed a Contract in favor of Movant in the original principal amount of $10,284.16 ("Contract").  A true and correct copy of the Contract is attached as **Exhibit "1."**  Movant is an entity entitled to enforce the Contract.  The debt described by the Contract is secured by the Vehicle as evidenced by the Lien and Title Information ("Title") naming Movant as the lienholder thereof.  A true and correct copy of the Title is attached as **Exhibit "2."**

Subsequent to the execution of the Contract and Title, Debtor filed for protection under Chapter 13 of Title 11 of the United States Code on June 30, 2021.  On October 29, 2021, Debtor filed Plan No. 2 (Doc. 54) in which Debtor proposes to make the payments required under the Contract directly to Movant.  However, the proposed plan has not yet been confirmed.

As of November 17, 2021, the approximate total payoff is $10,253.17.  The last payment was received on August 12, 2021, which made the account due for the for the September 14, 2021 payment.  The Debtor is currently delinquent $862.00.

///

///

///

///

## V.    AUTHORITY

### A.    Cause Exists to Grant Relief Pursuant to Section 362(d)(1); Lack of Adequate Protection

Movant submits that cause exists to grant relief under 11 U.S.C. § 362(d)(1), which provides that a party may seek relief from stay based upon "cause," including lack of adequate protection. Adequate protection can be offered in the form of cash or periodic payments or the existence of a sufficient equity cushion.

Movant submits that adequate protection in this case requires normal and periodic cash payments to Movant.  The Debtor has not made a payment to Movant in nearly **three (3) months**. A continuing failure to maintain required regular payments has been held, in and of itself, to constitute sufficient cause for granting a motion to modify the stay.  In re Trident Corp., 19 BR 956,958 (Bankr. E.D. Pa. 1982), *aff'd* 22 BR 491 (Bankr. E.D. Pa. 1982 (citing In re Hinkle, 14 BR 202, 204 (Bankr. E.D. Pa. 1981); see also In re Jones, 189 BR 13, 15 (Bank. E.D. Okla 1995) (citing Hinkle, 14 BR at 204).  The Debtor's failure to tender regular ongoing monthly payments is sufficient cause to terminate the automatic stay.

## VI.    CONCLUSION

Based on the foregoing, Movant alleges that it is not adequately protected.  Movant is not receiving regular monthly payments, and is unfairly delayed from proceeding with the collection of the Vehicle.  Accordingly, relief from the automatic stay should be granted to Creditor pursuant to 11 U.S.C. §362(d)(1).

**THEREFORE**, Movant respectfully requests an Order be entered by this Court as follows:

1.    An Order Terminating the Automatic Stay, permitting Movant to continue all acts necessary to secure possession of the subject Vehicle and sell the Vehicle in a commercially reasonable manner without further Hearing before this Court pursuant to applicable state law;

2.    For an Order waiving the 14-day stay provided by Bankruptcy Rule 4001(a)(3);

/ / /

/ / /

/ / /

Motion for Relief
Page 3

3.    For an Order binding and effective despite any conversion of this case.

4.    For such other relief as this Court deems appropriate

**GHIDOTTI BERGER, LLP**

DATED: November 23, 2021                    By: _/s/ Regina A. Habermas, Esq._
                                                 Regina A. Habermas, Esq.
                                                 Nevada Bar No. 8481
                                                 Attorneys for Movant

1   Regina A. Habermas, Esq.
    Nevada Bar No. 8481
2   GHIDOTTI BERGER, LLP
3   7251 West Lake Mead Blvd. Suite 470
    Las Vegas, NV 89128
4   Tel: (949) 427-2010
    Fax: (949) 427-2732
5   Email: ghabermas@ghidottiberger.com

6   Attorney for Secured Creditor
7   Carvana, LLC, its successors and assigns

8              UNITED STATES BANKRUPTCY COURT

9             DISTRICT OF NEVADA, LAS VEGAS

10  In re:                          )   CASE NO.: 21-13343-nmc
                                    )   Chapter 13
11  CYNTHIA L. GARCIA,              )
                                    )   DECLARATION IN SUPPORT OF
12                                  )   MOTION FOR RELIEF FROM STAY
                                    )   (11 U.S.C. § 362, Bankruptcy Rule 4001)
13        Debtor.                   )
                                    )
14                                  )
                                    )
15                                  )
                                    )
16                                  )
                                    )
17

18  I, _Keisha Walker_, declare and state as follows:

19        1.    I am over the age of eighteen years and not a party to this action.  The facts set for the

20  below are known to me personally based upon the review of the business records and I have first-

21  hand knowledge of them.  If called as a witness, I could and would testify competently under oath to

22  such facts.

23        2.    I am a(n) _Manager_ at Carvana, LLC ("Movant") and am familiar

24  with the subject Contract in favor of Movant, and the subject Bankruptcy case.

25        3.    I am familiar with the manner and procedure by which the records of Movant are

26  obtained, prepared, and maintained.  Those records are obtained, prepared, and maintained by

27

28  Declaration in Support of Motion for Relief
    Page 1

employees or agents of Movant in the performance of their regular business duties at or near the time, act, conditions, or events recorded thereon.  The records are made either by persons with knowledge of the matters they record or from information obtained by person with such knowledge. It is my business practice to maintain these records in the regular course of business.

4.    Movant has been responsible for the handling of all matters relative to the underlying Contract prior to the filing of the within motion, including but not limited to processing of all payments received, crediting of received payments, adding all proper charges to the Contract, confirming the maintenance of insurance, communicating with and responding to the borrower on all matters relative to the Contract.

5.    Debtor executed a contract dated September 13, 2020, in the principal amount of $10,284.16 ("Contract").  Movant is an entity entitled to enforce the Contract. A true and correct copy of the Contract is attached hereto as **Exhibit "1"**.

6.    All obligations (collectively, the "Obligations") of the Debtor under the Contract are secured by a 2017 Ford Focus, VIN#1FADP3F24HL285597 ("Vehicle") as evidenced by the Lien and Title Information ("Title") naming Movant as the lienholder thereof.  A true and correct copy of the Title is attached hereto as **Exhibit "2"**.

7.    On June 30, 2021, Debtor filed a Chapter 13 Bankruptcy petition commencing the instant in the United States Bankruptcy Court for the District of Nevada.  Debtor's proposed Plan provides that Debtor will make the payments under the Contract directly to Movant (Doc. 54).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Declaration in Support of Motion for Relief
Page 2

8.    As of November 17, 2021, the approximate total payoff is $10,253.17.  The last payment was received on August 12, 2021, which made the account due for the for the September 14, 2021 payment.  The Debtor is currently delinquent $862.00.  A true and correct copy of the payment history is attached hereto as **Exhibit "3"**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 11/19/2021 (Date) Fort Worth (City), TX (State)

_____
Signature

_____
Print Name

Declaration in Support of Motion for Relief
Page 3

# EXHIBIT "1"

This is a copy view of the Authoritative Copy held by the designated custodian

## CONTRACT FOR SALE AND SECURITY AGREEMENT FOR SALE OF VEHICLE
## WITH PAYMENT OF SIMPLE INTEREST

| SECTION A | | CREDITOR CARVANA, LLC | |
|---|---|---|---|
| Buyer's Name(s) Cynthia Lynne Garcia | | Address 63 PIERCE RD | |
| Name | | City WINDER | County N/A |
| Address 1071 Paradise Coach Dr | | State GA | Zip 30680-7280 Phone 1-800-333-4554 |
| City Henderson | County N/A | Stock No. | |
| State NV | Zip 89002 | Salesman N/A | Date 09/13/2020 |
| Bus. Phone N/A | Res. Phone | | |

| SECTION B | DISCLOSURE MADE IN COMPLIANCE WITH FEDERAL TRUTH IN LENDING ACT |
|---|---|

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate: | FINANCE CHARGE The dollar amount the credit will cost you: | AMOUNT FINANCED The amount of credit provided to you or on your behalf: | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled: | TOTAL SALES PRICE The total cost of your purchase on credit, including your down payment of $ 4,400.00 : |
|---|---|---|---|---|
| 25.974 % | $ 10,039.03 | $ 10,284.16 | $ 20,323.19 | $ 24,723.19 |

| Your Payment Schedule will be: | Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|---|
| | 71 | $ 284.00 | monthly beginning | 10/14/20 |
| | 1 | $ 159.19 | 09/14/26 | |
| | N/A | $ N/A | N/A | |

**Security:** You are giving a security interest in the goods or property being purchased.
☐ If checked, you are giving a security interest in N/A .

**Late Charge:** If a payment is more than 10 days late, you will be charged $15.00 or 8% of the payment, whichever is less.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and penalties.                    (e) means estimate.

COPY VIEW

### INSURANCE AND DEBT CANCELLATION

Credit life insurance, credit disability insurance and debt cancellation coverage, which is known as GAP Coverage, are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Term | Signatures: | | |
|---|---|---|---|---|---|
| Credit Life | N/A | N/A | I want credit life insurance: | X | N/A |
| Joint Credit Life | N/A | N/A | We want joint credit life insurance: | X | N/A |
| | | | | X | N/A |
| Credit Disability | N/A | N/A | I want credit disability insurance: | X | N/A |
| Credit Life and Disability | N/A | N/A | I want credit life and disability insurance: | X | N/A |
| Joint Credit Life and Disability | N/A | N/A | We want joint credit life and single disability insurance: | X | N/A |
| | | | | X | N/A |
| Debt Cancellation Coverage (GAP Coverage) | N/A | N/A | I want debt cancellation coverage (GAP Coverage): | X | N/A |

You may obtain property insurance from anyone you want that is acceptable to the Creditor on page 1 of 7. If you get the insurance from the Creditor, you will pay $ N/A and the term of the insurance will be N/A .

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services                                                                RSSAMVLAZ-NV 10/1/2012

Page 1 of 7

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the designated custodian

| SECTION C | ITEMIZATION OF AMOUNT FINANCED |
|---|---|

1. Vehicle Selling Price $ 11,990.00
   Plus: Documentary Fee $ N/A
   (This charge represents costs and profit to the dealer for items such as inspecting, cleaning, adjusting vehicles, and preparing documents related to the sale.)
   Plus: Emissions Inspection Fee $ N/A
   Plus Other ( N/A ) $ N/A
   Plus Other ( N/A ) $ N/A
   Plus Other ( N/A ) $ N/A
   Total Taxable Selling Price $ 11,990.00
2. Total Sales Tax $ 1,004.16
3. Amounts Paid to Public Officials
   a. Titling Fee $ 20.00
   b. Registration Fee $ 33.00
   c. Other Governmental Services Tax/Misc $ 287.00
   Total Official Fees $ 340.00
   (Add 3a through 3c)
4. Optional, nontaxable, fees or charges
   a. N/A $ N/A
   b. N/A $ N/A
   c. N/A $ N/A
   d. N/A $ N/A
   e. N/A $ N/A
   f. N/A $ N/A
   Total Optional, nontaxable, fees or charges $ 0.00
   (Add 4a through 4f)
5. TOTAL CASH SALES PRICE $ 13,334.16
6. Gross Trade-In Allowance $ 0.00

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| Year | Make | Model | VIN |

   Less Prior Credit or Lease Balance $ N/A
   Net Trade-In Allowance $ 0.00
   (If negative, enter 0 and see line 11a)

7. Down Payment (Other Than Net Trade-In Allowance):
   a. Trade-In Sales Tax Credit $ N/A
   b. Cash $ 4,400.00
   c. Manufacturer's Rebate $ N/A
   d. Deferred Down Payment $ N/A
   e. Other ( N/A ) $ N/A
   Down Payment (Add 7a through 7e) $ 4,400.00
8. TOTAL DOWN PAYMENT AND NET TRADE-IN ALLOWANCE
   (Add 6 and 7) $ 4,400.00
9. UNPAID BALANCE OF CASH SALES PRICE
   (Subtract 8 from 5) $ 8,934.16
10. Plus Optional Insurance and Debt Cancellation Charges*
   a. Credit Life Insurance Premium
     Paid to ( N/A )
     Term ( N/A ) $ N/A
   b. Credit Disability Insurance Premium
     Paid to ( N/A )
     Term ( N/A ) $ N/A
   c. Debt Cancellation Coverage (GAP Coverage)
     Paid to ( N/A )
     Term ( N/A ) $ N/A
   d. Other Insurance
     Paid to ( N/A )
     Term ( N/A ) $ N/A
   Total Optional Insurance and Debt Cancellation Charges
   (Add 10a through 10d) $ N/A
11. Other Amounts Financed*
   a. Prior Credit or Lease Balance $ 0.00
     Paid to ( N/A )
   b. ( Vehicle Protection ) $ 1,350.00
     Paid to ( Carvana )
   c. ( N/A ) $ N/A
     Paid to ( N/A )
   Total Other Amounts Financed $ 1,350.00
   (Add 11a through 11c)
12. TOTAL AMOUNT FINANCED $ 10,284.16
   (Add 9, 10 and 11)
*Seller may retain or receive a portion of this amount.

| SECTION D | VEHICLE RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT |
|---|---|

This contract is made the 13 (day) of 09 (month) of 2020 (year), between you, the Buyer(s) shown on page 1 of 7, and us, the Seller shown as Creditor on page 1 of 7. Having been quoted a cash price and a credit price and having chosen to pay the credit price (shown as the Total Sales Price in Section B on page 1 of 7), you agree to buy and we agree to sell, subject to all the terms of this contract, the following described vehicle, accessories and equipment (all of which are referred to in this contract as "Collateral"):

New or Used: Used    Year and Make: 2017 Ford    Series: Focus    Body Style: Sedan
No. of Cyl: 4    If truck, ton capacity: N/A    Manufacturer's Serial Number: 1FADP3F24HL285597
Use for which purchased: ☒ Personal ☐ Business ☐ Agriculture
INCLUDING:
☐ Sun/Moon Roof     ☒ Air-Conditioning     ☒ Automatic Transmission
☒ Power Steering     ☒ Power Door Locks     ☐ Power Seats
☒ Power Windows     ☒ Tilt Wheel     ☐ Vinyl Top
☐ Cassette     ☒ Cruise Control     ☒ AM/FM Stereo
☒ Compact Disc Player
White Color N/A    Tires N/A    Lic. No.

You, severally and jointly, promise to pay to us the Total of Payments (shown in Section B) according to the Payment Schedule (also shown in Section B), until paid in full, together with interest after maturity at the Annual Percentage Rate disclosed on page 1 of 7.

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services                 RSSMVLAZ-NV 10/1/2012

Page 2 of 7

This is a copy view of the Authoritative Copy held by the designated custodian

To secure such payment, you grant to us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions and proceeds of the Collateral. Insurance in which we or our assignee are named as beneficiary or loss payee, including any proceeds of such insurance or refunds of unearned premiums, or both, are assigned as additional security for this obligation and any other obligation created in connection with this sale. We, our successors and assigns, hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

| | | | |
|---|---|---|---|
| Address where Collateral will be located: | 1071 Paradise Coach Dr | Henderson | N/A | NV |
| | Street | City | County | State |
| Your address after receipt of possession of Collateral: | 1071 Paradise Coach Dr | Henderson | N/A | NV |
| | Street | City | County | State |

Notice of Rescission Rights (Option to Cancel)
If the Buyer signs here, the notice of rescission rights on page 6 of 7 is applicable to this contract.

Buyer's signature ___N/A_____

Co-Buyer's signature ___N/A_____

STATE DISCLOSURE REQUIREMENTS: The provisions of Section B and Section C above are incorporated into this agreement for purposes of state disclosure requirements.

Additional Terms and Conditions: The additional terms and conditions set forth in this contract are a part of this contract and are incorporated herein by reference.

OPTION __N/A___ You pay no Finance Charge if the Total Amount Financed, Item No. 12, Section C, is paid in full on or before the ___N/A___ (day) of _____N/A_____ (month) of __N/A___ (year).

SELLER'S INITIALS: __N/A__

---

**SECTION E**

☒ If checked, you agree to use electronic records and electronic signatures to document this contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local law and regulations.

UPON ENTERING INTO THIS CONTRACT, YOU WILL RECEIVE A PAPER COPY OF THE ORIGINAL CONTRACT ELECTRONICALLY SIGNED AND COMPLETE WITH ALL TERMS, CONDITIONS AND DISCLOSURES TO TAKE WITH YOU.

**NOTICE TO BUYER**

**Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to a completed copy of this agreement. If you pay the amount due before the scheduled date of maturity of the indebtedness and you are not in default in the terms of the contract for more than 2 months, you are entitled to a refund of the unearned portion of the finance charge. If you fail to perform your obligations under this agreement, the vehicle may be repossessed and you may be liable for the unpaid indebtedness evidenced by this agreement.**

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 2 of 7, federal regulation may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

*The text of the preceding two paragraphs is set forth below in Spanish:*
*Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo en la página 2 de 7, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.*
*LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTARIA EN EL CONTRATO DE VENTA.*

Retail Installment Contract-NV   Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

RSSMVLAZ-NV 10/1/2012

_____ Page 3 of 7

THIS IS A COPY

This is a copy view of the Authoritative Copy held

**BUYER AND CO-BUYER ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED-IN PAPER COPY OF THIS CONTRACT AND THE DISCLOSURE ON PAGES 1 AND 2 OF 7 AT THE TIME OF SIGNING.**

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS OTHERWISE INDICATED IN SECTION C.

Buyer: _____    Date: _____ 09/13/2020 _____

Co-Buyer: _____ N/A _____    Date: _____ N/A _____

Creditor: _ Carvana, LLC _____    Date: _____ 09/13/2020 _____

By: _____    Title: _____ General Counsel _____

[The rest of this page intentionally left blank.]

COPY VIEW

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

RSSMVLAZ-NV 10/1/2012

Page 4 of 7

This is a copy view of the Authoritative Copy held by the designated custodian

## ADDITIONAL TERMS AND CONDITIONS (Simple Interest)

**SIMPLE INTEREST CONTRACT** - This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule set forth in the disclosures on page 1 of 7 may differ. The final payment may differ depending upon the dates payments are received and events which occur after this contract is made. For example, early payments will have the effect of reducing your final payment, while late payments will cause your final payment to be higher. Your promise requires you to pay the final payment on the date due, which payment will be equal to all unpaid sums due under this contract, even if the amount of the final payment differs from the amount of final payment disclosed on page 1 of 7 of this contract.

**DEFAULT** - If you default in the performance of this agreement, because (1) you fail to make a payment later than 30 days past the date required by the agreement, or (2) the prospect of payment, performance or realization of collateral is significantly impaired (the burden of establishing the prospect of significant impairment is on the Seller), we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against you for all unpaid sums, and (3) take immediate possession of the vehicle. Upon taking possession of the vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it at public or private sale. We may purchase the vehicle at any sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the property, and the remainder will be applied to the unpaid sums owing under this contract. Attorney's fees and court costs are allowed too. If there is any money left over (surplus), it will be paid to you. If a balance still remains owing, you promise to pay that balance upon demand. If you default or breach this agreement, you agree to pay finance charges at the Annual Percentage Rate shown on page 1 of 7 until all sums owing on the contract are paid in full. Our remedies are cumulative and taking of any action is not a waiver and does not prohibit us from pursuing any other remedy. You promise to pay reasonable collection costs and expenses, including attorney's fees, if you default under this agreement. If suit is filed, you agree that attorney's fees and costs will be awarded to the prevailing party. If the vehicle is repossessed, we may store personal property found in the vehicle for your account and at your expense and, if you do not claim the property within 90 days after the repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you.

**DELINQUENCY AND COLLECTION CHARGES** - You will pay a delinquency charge equal to the lesser of $15 or 8 percent of any installment in default for more than 10 days. If you default as described in the preceding paragraph and we refer this contract for collection to an attorney who is not our salaried employee or a salaried employee of the holder of this contract, you will pay reasonable attorney's fees plus court costs, and reasonable collection costs to the extent not prohibited by law.

**DEMAND FOR FULL PAYMENT AND ADDITIONAL REMEDIES ON DEFAULT** - If you default under this contract, at the time of the default or any time after default (if the default has not been cured previously) we may require immediate payment of the unpaid portion of the amount you owe us. If there is any money left over (surplus), it will be paid to you. On any default, we will have all the remedies of a secured party under the Uniform Commercial Code. If the cash price on page 2 of 7 is $1,000 or less, you will not be personally liable for any deficiency incurred in a sale after repossession.

**OWNERSHIP OF THE COLLATERAL** - You represent that there are no liens, claims or encumbrances on the Collateral except for the security interest you grant by this contract to us and you further represent that you have executed no financing statement covering the Collateral except for the one relating to this contract.

**LOCATION AND USE OF COLLATERAL** - You agree to notify us in writing of any change of your address or of any change in the location of the Collateral. Unless you first have received our written consent, you may not permanently take the Collateral out of the State shown in Section D in the section entitled "Address Where Collateral Will Be Located" and you may not sell, lease or otherwise dispose of the Collateral or any part of it by any means.

You will comply with all laws, ordinances, regulations and orders relating to the Collateral. You will keep the Collateral in good condition and will not alter or substantially modify it or conceal it. You will not allow any other security interest on the Collateral besides the security interest granted to us under this contract.

**INSPECTION OF THE COLLATERAL** - We may inspect the Collateral at any reasonable time.

**TAXES** - You are responsible for and will pay when due all taxes and assessments levied on the Collateral. If you fail to do so, we may pay any such tax or assessment on your behalf. An amount equal to that which we paid will be added to the Total of Payments then owing, and you will be charged a finance charge on the amount we paid at the highest lawful contract rate.

**PROPERTY INSURANCE** - You will keep the Collateral insured against such risks and in such amount as we may from time to time require with an insurer that you choose and we approve. As indicated in Section B, if you choose, we will obtain property insurance for you at the premium shown. Whether the insurance is provided by you or by us, you will pay all premiums for this insurance when the premiums are due and payable. If you provide property insurance, you will deliver the policies to us as additional security and will provide us with receipts showing payment of premiums. If you do not obtain the insurance or pay the premiums, we may do so for you. If we do this, an amount equal to that which we have paid for the premiums will be added to the Total of Payments then owing and a finance charge at the highest lawful rate will be charged on that amount. If we do not obtain the insurance, none of our other rights and remedies will be prejudiced. You agree that any proceeds from insurance are to be used to either repair or replace the vehicle. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged or destroyed. If you default (as described on page 5 of 7), we may cancel the insurance and credit any insurance premium refunds to the unpaid balance of this contract.

**LIABILITY INSURANCE IS NOT REQUIRED BY THIS CONTRACT. YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM LIABILITY INSURANCE IS TO BE OBTAINED.**

**INFORMATION TO INSURANCE COMPANY OR AGENT** - You give your permission to furnish any information about the Collateral or any information about insurance policies on the Collateral to an insurance agent or company.

**CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND DEBT CANCELLATION COVERAGE (GAP COVERAGE)** - If you indicated in Section B that you want optional credit life insurance, credit disability insurance or debt cancellation coverage (GAP Coverage), or any combination thereof, you agree to pay for such insurance at the premium shown in Section B.

**NO WARRANTIES - THE SELLER MAKES NO REPRESENTATIONS, PROMISES OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF THE COLLATERAL OR WHETHER THE COLLATERAL IS SUITABLE OR FIT FOR THE PARTICULAR PURPOSE INTENDED UNLESS THE SELLER HAS DONE SO IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER AS THE ORIGINAL SELLER OF THE COLLATERAL. HOWEVER, IF THE SELLER MAKES AN EXPRESS WARRANTY IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER OR, WITHIN 90 DAYS AFTER THE DATE OF THIS CONTRACT, THE SELLER ENTERS INTO A SERVICE CONTRACT WITH THE BUYER THAT APPLIES TO THE COLLATERAL, THE EXCLUSION OF IMPLIED WARRANTIES SET FORTH IN THIS PARAGRAPH DOES NOT EXCLUDE ANY IMPLIED WARRANTIES THAT MAY EXIST WITH RESPECT TO THE COLLATERAL DURING THE TERM OF THE CONTRACT OR AGREEMENT IN WHICH THE EXPRESS WARRANTY IS MADE.**

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

RSSIMVLAZ-NV 10/1/2012

Page 5 of 7

This is a copy view of the Authoritative Copy held by the designated custodian

**NOTICES** - Any notice we have to give you pursuant to the Uniform Commercial Code will be reasonable if we send it to your address shown in Section D in the section entitled "Your Address After Receipt of Possession of Collateral" at least 5 days before the event with respect to which notice is required unless we have actual knowledge of a change in your address and, in that event, the notice will be reasonable if we send it to the changed address.
**TIME IS OF THE ESSENCE** - You understand that all payments that are required must be made on the day due.
**EXERCISING OUR RIGHTS** - We can, without notice, delay enforcing our rights or exercise only part of them, without losing them, or waive a right we have to one Buyer without waiving it as to the other(s).
**MEANING OF WORDS** - In this contract the words "you" and "your" means each and all those who sign this contract as Buyers or Co-Buyers, and their heirs, executors, administrators, successors and assigns. The words "we," "us" and "ours" means the Creditor shown on page 1 of 7 in Section A, and if this contract is assigned, its successors and assigns and any other holder of this contract.
**GOVERNING LAW** - This contract has been delivered in the State of Creditor's place of business and will be governed by the laws of that State and applicable federal law.
**INVALIDITY** - Wherever possible each provision of this contract shall be interpreted so that it is valid under applicable law, but if any provision is prohibited or invalid, the remaining provisions of this contract will continue to be valid.
**NOTICE OF RESCISSION RIGHTS (Option to Cancel)** - The provisions of this paragraph only apply if you have signed the Notice of Rescission Rights on page 3 of 7 of this contract. (1) You agree to furnish the Seller any documentation necessary to verify information contained in your credit application. (2) You acknowledge that it may take a few days for the Seller to verify your credit and assign the contract. In consideration of the Seller agreeing to deliver the vehicle, you agree that if the Seller is unable to assign the contract to a Financial Institution with whom the Seller regularly does business pursuant to terms of assignment acceptable to the Seller, the Seller may elect to rescind the contract. (3) If the Seller elects to rescind the contract, the Seller shall, within 20 days after the date of the contract, give you notice of the rescission. Such notice shall be deemed given upon deposit of a written notice in the United States mail directed to you at the address you stated in the contract or upon any other manner in which actual notice is given to you. Upon receipt of such notice, you shall immediately return the vehicle to the Seller in the same condition as when sold, reasonable wear and tear excepted, and the contract shall be deemed rescinded. The Seller agrees, upon rescission of the contract, to restore to you all consideration received in connection with the contract, including any trade-in vehicle. (4) If the vehicle is not immediately returned to the Seller after giving notice of the Seller's election to rescind the contract, you are liable to the Seller for all expenses incurred by the Seller in obtaining possession of the vehicle, including attorney's fees, and the Seller has the right to repossess the vehicle as permitted by law. (5) While the vehicle is in your possession, all terms of the contract, including those related to the use of the vehicle and insurance for the vehicle, are in force and all risk of loss or damage to the vehicle must be assumed by you. You shall immediately pay all reasonable repair costs related to any damage to the vehicle while it is in your possession or under your control and until the vehicle is returned to the Seller.
**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 2 of 7, federal regulation may require a special buyer's guide to be displayed on the window.

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

## ASSIGNMENT

Seller may transfer this contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. The Seller may assign this contract electronically. Contact Assignee about this contract at  N/A

_____ .

Seller signs:  N/A

By: _____

Title _____

To induce Assignee to purchase the contract, Seller represents and warrants to Assignee as follows: (a) the contract is genuine and the statements and amounts inserted herein are correct; (b) the contract and security interest arose entirely from the sale of the Collateral or services described in the contract, or both; (c) the down payment, if any, as shown on page 2 of 7 of this contract, has been received and no part thereof was advanced directly or indirectly by Seller to Buyer; (d) the goods and services have been furnished to the satisfaction of Buyer and all obligations of warranty to Buyer, either express or implied, have been and will continue to be fulfilled by Seller; (e) the Collateral or services, or both, have been sold, provided and delivered to and accepted by Buyer; (f) the security interest granted to Seller in the contract constitutes a valid first lien on the Collateral and has been filed or recorded according to law to preserve the priority of each lien; (g) the Collateral is free and clear of all liens and encumbrances, except the security interest granted by this contract; (h) the full amount of the stated Total of Payments remains unpaid; (i) Seller is the holder of the contract and the security interest in the Collateral free and clear of all liens and encumbrances and Seller has full power and authority to assign the same; (j) the transaction was consummated on the above date set forth in the contract and Buyer did not receive possession of the Collateral prior to the date of consummation; (k) Buyer was furnished a completed copy of the contract prior to consummation; (l) the Collateral is insured with a company acceptable to Assignee against physical damage in addition to such other risks as Assignee requires under an insurance policy acceptable to Assignee; (m) Seller has not knowingly communicated to Assignee incorrect information relating to the Buyer's application or credit statement or knowingly failed to communicate information relating to such application or credit statement; (n) the facts set forth in the contract are true; (o) Buyer has no defense or counterclaim to payment of the obligation evidenced by the contract; (p) Buyer is or, if more than one, each is not a minor and has legal capacity to execute this contract and is liable thereon; and (q) Seller has no reason to believe the Buyer has ever violated any laws concerning liquor or narcotics.

In the event any warranty shall be breached or any representation shall be false, Seller shall, upon demand and irrespective of whether the contract is then in default, repurchase the contract from Assignee at a price equal to the unpaid balance of the contract plus accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect on the date of such demand by Assignee, plus any costs or expenses of collection, including attorney's fees, whether incurred by Assignee by suit or on appeal or otherwise. Seller waives all defenses that otherwise might have been available but nothing herein contained shall preclude Assignee from enforcing against Seller any other remedies provided by law for misrepresentation or breach of warranty. In the event of any proceedings commenced by Assignee against Buyer with respect to the contract, services or the Collateral, if Buyer asserts as a defense, set off or counterclaim any act, omission or default by Seller, Seller shall forthwith on demand repurchase the contract for the amount set forth above. The provisions of this assignment shall be binding on

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

RSSIMVLAZ-NV 10/1/2012

_____  Page 6 of 7

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

the heirs, representatives, successors and assigns of Seller and shall inure to the benefit of the successors and assigns of Assignee. The above assignment provisions apply and are in addition to any obligations of Seller as provided in the paragraph below endorsed by Seller.

1. RECOURSE: Seller absolutely and unconditionally guarantees the prompt payment of either the total unpaid amount of the contract and any accrued interest or such other amount agreed to by Seller and Assignee in a separate agreement, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this guaranty or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives any and all defenses arising out of the guarantor relationship.

Seller: _____

By: _____

Title: _____ Date: _____

2. REPURCHASE: In the event of default by the Buyer under any of the terms or conditions of the contract, Seller will repossess and repurchase the Collateral, or if the Collateral has already been repossessed, Seller will repurchase the Collateral at the place of repossession or recovery. The Collateral will be repurchased in any event AS IS, at a price equal to the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the default, together with all costs, expenses and reasonable attorney's fees incurred by Assignee in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives all other defenses that might otherwise have been available. At the time of repurchase, Seller shall pay to Assignee the purchase price in cash and Assignee may reassign to Seller without recourse and without warranties, express or implied, all title retention or lien instruments and all contracts or promissory notes which Assignee then holds upon such Collateral.

Seller: _____

By: _____

Title: _____ Date: _____

3. LIMITED ENDORSEMENT: In the event of default of Buyer before Buyer shall have paid the first _____ installments under the foregoing contract, Assignee may reassign the contract to Seller and Seller agrees, upon tender of such reassignment and in consideration thereof to pay to Assignee either the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the reassignment, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and Seller waives any other defenses that might otherwise have been available.

Seller: _____

By: _____

Title: _____ Date: _____

4. WITHOUT RECOURSE: This assignment shall be without recourse against Seller except for such obligations as are set forth in the assignment above.

Seller: _____

By: _____

Title: _____ Date: _____

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

RSSIMVLAZ-NV 10/1/2012
_____  Page 7 of 7

# EXHIBIT "2"



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Carvana LLC

## Lien and Title Information

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | CA0027 |
| **Lienholder** | Carvana LLC |
| **Lienholder Address** | PO Box 29002 |
| | Phoenix, AZ 85038 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1FADP3F24HL285597 | **Issuance Date** | 12/10/2020 |
| **Title Number** | | **Received Date** | 12/19/2020 |
| **Title State** | NV | **ELT/Paper** | ELECTRONIC |
| **Year** | 2017 | **Odometer Reading** | 50001 |
| **Make** | FORD | **Branding** | |
| **Model** | FOCUS SE | | |
| **Owner 1** | GARCIA CYNTHIA LYNNE | | |
| **Owner 2** | | | |
| **Owner Address** | 1071 PARADISE COACH DR | | |
| | HENDERSON, NV 890028944 | | |

**Printed:** Thursday, July 1, 2021 1:05:10 PM PST

# EXHIBIT "3"

| Transaction Date | Transaction Amount | Transaction Event | Reversal Reason | NSF Date | Current Due Date | Amount Due | Remaining Due | Principal | Interest | Late Fee | Other Fee | Per Diem | Days Between Payments | Next Due Date | Principal Outstanding | Receipt Number | Lot Number | Check Number | Posted Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/29/2021 | (5.00) | Late Fee Assessment | | | 9/14/2021 | 284.00 | 284.00 | 0.00 | 0.00 | (5.00) | 0.00 | 6.78 | | 9/14/2021 | 9,524.69 | 0 | | 0 | 10/29/2021 |
| 9/29/2021 | (5.00) | Late Fee Assessment | | | 9/14/2021 | 284.00 | 284.00 | 0.00 | 0.00 | (5.00) | 0.00 | 6.78 | | 9/14/2021 | 9,524.69 | 0 | | 0 | 9/29/2021 |
| 8/12/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 8/14/2021 | 284.00 | 284.00 | 119.29 | 164.71 | 0.00 | 0.00 | 6.78 | 24 | 9/14/2021 | 9,524.69 | 33002839 | 10592 | | 8/12/2021 |
| 7/19/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 7/14/2021 | 284.00 | 284.00 | 62.96 | 221.04 | 0.00 | 0.00 | 6.86 | 32 | 8/14/2021 | 9,643.98 | 32395109 | 10592 | | 7/19/2021 |
| 6/17/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 6/14/2021 | 284.00 | 284.00 | 80.46 | 203.54 | 0.00 | 0.00 | 6.91 | 28 | 7/14/2021 | 9,706.94 | 31523778 | 10592 | | 6/17/2021 |
| 5/20/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 5/14/2021 | 284.00 | 284.00 | 0.00 | 284.00 | 0.00 | 0.00 | 6.96 | 42 | 6/14/2021 | 9,787.40 | 30789916 | 10592 | | 5/20/2021 |
| 4/8/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 4/14/2021 | 284.00 | 284.00 | 191.68 | 92.32 | 0.00 | 0.00 | 6.96 | 13 | 5/14/2021 | 9,787.40 | 29709138 | 10592 | | 4/8/2021 |
| 3/26/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 3/14/2021 | 284.00 | 284.00 | 60.74 | 223.26 | 0.00 | 0.00 | 7.10 | 28 | 4/14/2021 | 9,979.08 | 29400827 | 10592 | | 3/26/2021 |
| 2/26/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 2/14/2021 | 284.00 | 284.00 | 0.00 | 284.00 | 0.00 | 0.00 | 7.14 | 43 | 3/14/2021 | 10,039.82 | 28642111 | 10592 | | 2/26/2021 |
| 1/14/2021 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 1/14/2021 | 284.00 | 284.00 | 82.61 | 201.39 | 0.00 | 0.00 | 7.14 | 28 | 2/14/2021 | 10,039.82 | 27586557 | 10592 | | 1/14/2021 |
| 12/17/2020 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 12/14/2020 | 284.00 | 284.00 | 81.24 | 202.76 | 0.00 | 0.00 | 7.18 | 28 | 1/14/2021 | 10,122.43 | 26931199 | 10592 | | 12/17/2020 |
| 11/19/2020 | 284.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 11/14/2020 | 284.00 | 284.00 | 22.73 | 261.27 | 0.00 | 0.00 | 7.24 | 36 | 12/14/2020 | 10,203.67 | 26284955 | 10592 | | 11/19/2020 |
| 11/19/2020 | 15.00 | NSF Fee Paid--ONE TIME ACH PAYMENT | | | 11/14/2020 | 284.00 | 284.00 | 0.00 | 0.00 | 0.00 | 15.00 | 7.26 | | 11/14/2020 | 10,226.40 | 26284955 | 10592 | | 11/19/2020 |
| 11/18/2020 | (15.00) | NSF Fee Assessment | | | 11/14/2020 | 284.00 | 284.00 | 0.00 | 0.00 | 0.00 | (15.00) | 7.22 | | 11/14/2020 | 10,167.38 | 0 | | 0 0 | 11/18/2020 |
| 11/14/2020 | (284.00) | Payment Reversal--DT Auto Pay | NSF - Account Closed | 11/18/2020 | 11/14/2020 | 284.00 | 284.00 | (59.02) | (224.98) | 0.00 | 0.00 | 7.26 | | 11/14/2020 | 10,226.40 | 26181477 | 10592 | | 11/18/2020 |
| 11/14/2020 | 284.00 | Normal Payment--DT Auto Pay | | | 11/14/2020 | 284.00 | 284.00 | 59.02 | 224.98 | 0.00 | 0.00 | 7.22 | 31 | 12/14/2020 | 10,167.38 | 26181477 | 10592 | | 11/14/2020 |
| 10/14/2020 | 284.00 | Normal Payment--DT Auto Pay | | | 11/14/2020 | 284.00 | 284.00 | 57.76 | 226.24 | 0.00 | 0.00 | 7.26 | 0 | 11/14/2020 | 10,226.40 | 25446987 | 10592 | | 10/14/2020 |

1

## **CERTIFICATE OF SERVICE**

2        I am employed in the County of Orange, State of California.  I am over the age of

3    eighteen and not a party to the within action.  My business address is 1920 Old Tustin Ave.,

4    Santa Ana, CA 92705.

5        I am readily familiar with the business's practice for collection and processing of

6    correspondence for mailing with the United States Postal Service; such correspondence would

7    be deposited with the United States Postal Service the same day of deposit in the ordinary

8    course of business.

9        1.  On November 23, 2021, I served the following document(s):

10          • **MOTION FOR RELIEF FROM STAY**

11       2.  I served the above-named document(s) by the following means to the persons as

12         listed below:

13        **a.**  **ECF System**

14          COUNSEL FOR DEBTOR:

         GEORGE HAINES         ghaines@freedomlegalteam.com

15

16          TRUSTEE:

         RICK A. YARNALL       ecfmail@LasVegas13.com

17

18        **b.**  **United States mail, postage fully prepaid**

19          DEBTOR(s):

       CYNTHIA L. GARCIA

20          1071 PARADISE COACH DR.

       HENDERSON, NV 89002

21

22       I declare under penalty of perjury under the laws of the United States of America that

23   the foregoing is true and correct.

24     DATED:  November 23, 2021     By:  */s/ Brandy Carroll*

                              Brandy Carroll

25

26

27

28